IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADVENTIST GLENOAKS HOSPITAL,            )
ADVENTIST HINSDALE HOSPITAL,            )
ADVENTIST LAGRANGE MEMORIAL             )
HOSPITAL, ADVOCATE BETHANY              )
HOSPITAL, ADVOCATE CHRIST HOSPITAL      )
& MEDICAL CENTER, ADVOCATE GOOD         )
SAMARITAN HOSPITAL, ADVOCATE            )
ILLINOIS MASONIC HOSPITAL &             )
MEDICAL CENTER, ADVOCATE                )
LUTHERAN HOSPITAL, ADVOCATE             )
SOUTH SUBURBAN HOSPITAL, ADVOCATE       )       No. 09 C 5240
TRINITY HOSPITAL, ALEXIAN BROTHERS      )
MEDICAL CENTER, BAPTIST REGIONAL        )       Judge Ronald A. Guzmán
MEDICAL CENTER, CHRIST HOSPITAL &       )
MEDICAL CENTER, CONDELL MEDICAL         )
CENTER, DELNOR-COMMUNITY                )
HOSPITAL, EDWARD HOSPITAL,              )
ELMHURST MEMORIAL HOSPITAL,             )
EVANSTON NORTHWESTERN                   )
HEALTHCARE, GOOD SHEPHERD               )
HOSPITAL, GOTTLIEB MEMORIAL             )
HOSPITAL, HARRISON MEMORIAL             )
HOSPITAL, HOLY CROSS HOSPITAL,          )
HOLY FAMILY MEDICAL CENTER,             )
INGALLS MEMORIAL HOSPITAL, JOHN H.      )
STROGER, JR. HOSPITAL OF COOK           )
COUNTY, KATHERINE SHAW BETHEA           )
HOSPITAL, KENT COUNTY HOSPITAL,         )
KISHAWAUKEE COMMUNITY HOSPITAL,         )
LAKE FOREST HOSPITAL, LANDMARK          )
MEDICAL CENTER, LITTLE COMPANY OF       )
MARY HOSPITAL & HEALTH CARE             )
CENTERS, LORETTO HOSPITAL, LOYOLA       )
UNIVERSITY MEDICAL CENTER,              )
MEMORIAL HOSPITAL OF RHODE ISLAND,      )
MEMORIAL MEDICAL CENTER, MICHAEL        )
REESE HOSPITAL & MEDICAL CENTER,        )
MORRIS HOSPITAL, MOUNT SINAI            )
HOSPITAL & MEDICAL CENTER,              )
NEWPORT HOSPITAL, CENTEGRA              )
HOSPITAL – MCHENRY f/k/a NORTHERN       )
ILLINOIS MEDICAL CENTER, NORTHWEST      )
COMMUNITY HEALTHCARE,                   )
NORTHWESTERN MEMORIAL HOSPITAL,         )
OUR   LADY OF THE RESURRECTION          )

MEDICAL CENTER, PALOS COMMUNITY )
HOSPITAL, PINEVILLE COMMUNITY )
HOSPITAL, PROVENA SAINT THERESE )
MEDICAL CENTER n/k/a VISTA MEDICAL )
CENTER WEST, PROVIDENT HOSPITAL OF )
COOK COUNTY, RESURRECTION )
MEDICAL CENTER, RHODE ISLAND )
HOSPITAL, ROGER WILLIAMS HOSPITAL, )
RUSH NORTH SHORE MEDICAL CENTER, )
RUSH UNIVERSITY MEDICAL CENTER, )
RUSH-COPLEY MEDICAL CENTER, SAINT )
ANTHONY HOSPITAL, SAINT BERNARD )
HOSPITAL, SAINT FRANCIS HOSPITAL – )
EVANSTON, SAINT FRANCIS HOSPITAL & )
HEALTH CENTER – BLUE ISLAND n/k/a )
METROSOUTH MEDICAL CENTER, SAINT )
JOSEPH HOSPITAL & HEALTH CARE )
CENTER, SAINT MARGARET MERCY )
HEALTHCARE CENTERS, INC. NORTH )
CAMPUS, SAINT MARY OF NAZARETH )
HOSPITAL CENTER n/k/a STS. MARY & )
ELIZABETH MEDICAL CENTER – ST. )
MARY'S CAMPUS, SHERMAN HOSPITAL, )
SILVER CROSS HOSPITAL, SOUTH )
COUNTY HOSPITAL HEALTHCARE )
SYSTEM, SOUTH SHORE HOSPITAL, ST. )
ALEXIUS MEDICAL CENTER, ST. )
ANTHONY MEDICAL CENTER, ST. )
ANTHONY MEMORIAL HEALTH CENTERS, )
ST. CATHERINE HOSPITAL, INC., ST. )
ELIZABETH'S HOSPITAL n/k/a STS. MARY )
& ELIZABETH MEDICAL CENTER – ST. )
ELIZABETH CAMPUS, ST. JAMES )
HOSPITAL & HEALTH CENTERS, ST. )
JOSEPH HEALTH SERVICES OF RHODE )
ISLAND, ST. MARGARET MERCY )
HEALTHCARE CENTERS, INC. SOUTH )
CAMPUS, ST. MARY MEDICAL CENTER, )
SWEDISH COVENANT HOSPITAL, T.J. )
SAMSON COMMUNITY HOSPITAL, THE )
COMMUNITY HOSPITALS, THE )
METHODIST HOSPITALS, INC. – )
NORTHLAKE, THE METHODIST )
HOSPITALS, INC. – SOUTHLAKE, THE )
MIRIAM HOSPITAL, THE WESTERLY )
HOSPITAL, UNIVERSITY OF CHICAGO )

2

| | |
|---|---|
| **HOSPITALS, UNIVERSITY OF ILLINOIS HOSPITAL, VALLEY WEST COMMUNITY HOSPITAL, VICTORY MEMORIAL HOSPITAL n/k/a VISTA MEDICAL CENTER EAST, WEST SUBURBAN HOSPITAL MEDICAL CENTER and WESTLAKE COMMUNITY HOSPITAL,** | ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) ) |
| **KATHLEEN SEBELIUS, Secretary, United States Department of Health and Human Services,** | ) ) ) ) ) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs seek review of a final administrative decision denying their claims that the wage indices used to calculate payments made to them for Medicare services they provided in federal fiscal years 2003 through 2006 were too low.

### **Background**

Medicare is a federal program that provides payment for covered services provided to elderly and disabled people. *See generally* 42 U.S.C. § 1395. Hospitals are reimbursed for covered services on a per-discharge basis depending on the diagnosis related group ("DRG") into which each patient falls. 42 U.S.C. § 1395ww(d)(2). The Secretary[1] sets the reimbursement rate for each discharge by determining a base payment rate (the average allowable costs per discharge for each participating hospital, adjusted for certain variables), dividing that rate into

---

[1]Medicare is administered by the U.S. Department of Health and Human Services' Centers for Medicaid and Medicare Services and providers are reimbursed by fiscal intermediaries, *i.e.*, private entities that act as the Secretary's agents. In this opinion, all of these entities will be referred to as "the Secretary."

3

labor-related and non-labor shares, adjusting the labor-related share by the wage index applicable to the market area in which the hospital is located and multiplying the labor-adjusted base rate by the weight assigned to the applicable DRG. *See* 42 U.S.C. § 1395ww(d); 42 C.F.R. §§ 412.60-64.

The Secretary determines the wage index by dividing the average hourly wage for each labor market by the national average hourly wage. 55 Fed. Reg. 36040 (Sept. 4, 1990). The average hourly wages are calculated by dividing the total wage costs reported by the hospitals in the region or nation, as the case may be, by the total employee hours they report having paid. *Id.*

Plaintiffs Stroger Hospital, which is in the Chicago market area, St. Joseph Health Services of Rhode Island and Landmark Medical Center, which are in the Providence-Warwick-Pawtucket, Rhode Island ("Rhode Island") market area, and T.J. Samson Community Hospital, which is in the rural Kentucky market area, pay their employees for a one-half hour lunch break and include those breaks in the paid hours they report to the Secretary. (*See* Administrative Record ("AR") 7-8.) The other plaintiffs are in the same market areas, but do not pay for lunch breaks or include them in the paid hours they report. (AR 8.) Stroger, Samson, St. Joseph and Landmark asked the Secretary to remove the lunch breaks from the reports used to determine the wage indices for the Chicago area for federal fiscal years ("FFY") 2004-2006, the rural Kentucky market area for FFY 2004 and the Rhode Island area for FFY 2003. (*See* AR 274, 973, 1402, 2068, 2593, 2611.) The Secretary refused, and her decision to include paid lunch breaks in the calculation of the contested wage indices was upheld by the Provider Reimbursement Review Board. (*See* AR 6-10.)

**Discussion**

Review of Medicare reimbursement decisions is governed by the Administrative Procedures Act ("APA"). 42 U.S.C. § 1395oo(f)(1). Under the APA, an agency's legal determinations will be upheld unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The arbitrary and capricious standard is highly deferential, and even if we disagree with an agency's action, we must uphold the action if the agency considered all of the relevant factors and we can discern a rational basis for the agency's choice." *Israel v. U.S. Dep't of Agric.*, 282 F.3d 521, 526 (7th Cir. 2002). Moreover, an agency's findings of fact will be upheld unless they are "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

In relevant part, the Medicare statute provides:

> [T]he Secretary shall adjust the proportion . . . of hospitals' costs which are attributable to wages and wage-related costs . . . for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level. . . . [T]he Secretary shall update the factor . . . on the basis of a survey . . . of the wages and wage-related costs of . . . hospitals in the United States.

42 U.S.C. § 1395ww(d)(3)(E)(i). The statute does not prescribe a method for adjusting wage costs but explicitly delegates authority to the Secretary to do so. *See id.*; H.R. Rep. No. 100-495, at 22 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313-1267 (noting that "[n]o particular methodology" for wage adjustment "is specified"). The regulations the Secretary has adopted pursuant to that authority "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 844 (1984).

The method the Secretary developed is the wage index, which she calculates by using the paid employee hours the hospitals report. *See, e.g.,* Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1994 Rates, 58 Fed. Reg. 46299 (Sept. 1, 1993). Consequently, if a hospital reports lunch breaks as paid, that time is included in the wage index calculation. *See id.* ("We have always used total paid hours because they more appropriately reflect what is included in total salary.").

Plaintiffs contend that lunch breaks, which are non-productive time, should not be included in paid hours because they do not impact the actual number of employee hours for which a hospital pays. In their view, a hospital that compensates its employees for seven and one-half productive hours and a half-hour lunch break pays for the same amount of work as one that pays only for productive time. Thus, plaintiffs argue, the Secretary's treatment of non-productive breaks as paid hours for some hospitals but not others violates the statute.

The regulatory record shows that the Secretary specifically considered, and rejected, this challenge to the paid hours policy:

> A few commenters agreed that paid lunch hours . . . should be removed from the wage index. Many more commenters . . . opposed or expressed concern about whether excluding paid lunch hours . . . would result in a more accurate wage index.
>
> Those commenters who opposed the proposal to exclude paid lunch hours . . . expressed concern that these changes would further complicate the wage index and that the additional data collection effort for providers might outweigh any benefits achieved through these changes. Further, the commenters believed that paid lunch hours . . . affect all providers in the same way, so the changes would likely be immaterial. One commenter also expressed concern that excluding paid hours could cause hospitals to rewrite existing contracts to raise their wage index. In addition, some commenters cautioned that excluding these paid hours would be difficult for intermediaries to apply consistently . . . because most payroll systems do not capture this data. Many commenters indicated that CMS had not published data to provide support that these changes are warranted.
>
> . . . .

> Those commenters who opposed the exclusion of paid lunch hours were generally concerned that hospitals do not currently track paid lunch hours. They indicated that it would be a major burden for hospitals to change their systems to accommodate reporting the hours and the benefits are likely to be minimum.
>
> . . . .
>
> We solicited comments on the possible exclusion of paid lunch hours . . . because of our concern that there were significant issues with the consistent treatment of these issues across hospitals that may impact the validity of the wage index. However, the comments indicate to us there is substantial disagreement with respect to whether [these] paid hours should be excluded from the wage index calculation. Therefore, we are not proceeding with [the] change . . . .

Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2004 Rates, 68 Fed. Reg. 45396-97 (Aug. 1, 2003). Moreover, there is nothing in the language or legislative history of the Medicare statute that suggests the paid hours policy contravenes congressional intent. On the contrary, Congress has repeatedly amended the statute without addressing the issue, which suggests that it approves of the Secretary's interpretation. *See Fed. Deposit Ins. Corp. v. Phila. Gear Corp.*, 476 U.S. 426, 437 (1986) ("When the statute giving rise to the longstanding interpretation has been reenacted without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." (quotation omitted)).

Similarly unavailing is plaintiffs' claim that the Secretary's interpretation conflicts with the hospital occupational mix surveys she has conducted. *See* 42 U.S.C. § 1395ww(d)(3)(E)(i) ("Not less often than once every 3 years the Secretary (through such survey or otherwise) shall measure the earnings and paid hours of employment by occupational category . . . ."). The instructions for the 2004 survey state that paid hours include "regular hours, overtime hours, paid holiday, vacation and sick leave hours, paid time-off hours, and hours associated with severance pay" but not "lunch and on-call hours." Center for Medicare and Medicaid Services,

7

CMS Form 10079 (2004), http://www4.cms.gov/AcuteInpatientPPS/downloads/form10079.pdf.
The instructions for the 2006 survey state that "paid hours include regular hours, overtime hours, paid holiday, vacation, sick, and other paid-time-off hours, and hours associated with severance pay" and not "non-paid lunch periods and on-call hours." Center for Medicare and Medicaid Services, CMS Form 10079 (2006), http://www4.cms.gov/AcuteInpatientPPS/downloads/occmix_survey_06final.pdf. Plaintiffs contend that the difference in the two forms shows that the Secretary varies the definition of paid hours to respond to, or overcome anticipated, reimbursement protests.

The record does not support plaintiffs' claim. There is ample evidence that paid lunch breaks are the exception, not the rule, in the hospital industry. (*See* AR 2581, 2599, 2625, Letters from Samson, St. Joseph and Landmark, respectively, to CMS of February 2002 stating that their practice of paying for lunch breaks "varies from . . . typical hospital industry practice[]" ); *see id.* 77-84 (testimony of plaintiffs' expert that Stroger, Samson, St. Joseph and Landmark are the only hospitals in their respective regions that, contrary to the "industry norm," pay for lunch breaks). Moreover, the Medicare Reimbursement Manual instructs hospitals to "includ[e] paid lunch hours" in the paid hours they report, which is what Stroger, Samson, St. Joseph and Landmark did. (*See* AR 313.) This evidence suggests that the 2006 survey instructions expressed what the 2004 instructions had implied, that unpaid lunch hours are not paid hours, not that the Secretary's definition of paid hours had changed.

Plaintiffs also argue that the Secretary's definition of paid hours violates the Fair Labor Standards Act ("FLSA"). That statute requires employers to pay employees for short breaks but not "bona fide meal periods," *i.e.*, rest breaks of at least thirty minutes during which employees

are completely relieved of their duties. 29 C.F.R. § 785.19. Plaintiffs say the Secretary's classification of lunch breaks as paid time contradicts the FLSA's teaching that they are not.

The Court disagrees. The FLSA requires that employees be paid for work, *i.e.*, time spent performing job duties, not rest, *i.e.*, time during which no duties are performed. *Id.* The statute does not, however, prohibit employers from paying for rest periods, as Stroger, Samson, St. Joseph and Landmark do. Moreover, neither the FLSA nor the Medicare statute instructs the Secretary to consider FLSA-mandated compensation, not actual compensation, when adjusting hospital costs. Thus, the Secretary's inclusion of FLSA-exempt meal periods in the paid hours component of the wage index calculation does not violate the FLSA.

Plaintiffs also attack the factual premise of the Secretary's policy, that Stroger, Samson, St. Joseph and Landmark actually pay for lunch breaks. Plaintiffs say the four hospitals' recording of the lunch breaks as paid time is an artifact of archaic accounting systems rather than an accurate reflection of paid time. There is some evidence, primarily the testimony of plaintiffs' expert, that supports this view. (*See* AR 77-84.) But the expert also testified that "all the Stroger hourly and exempt employees are . . . paid for their lunch hours." (AR 79.) Moreover, the record contains admissions by Samson, St. Joseph and Landmark that they "chose . . . to pay [their] employees for [a] half hour meal break" and their "workday . . . is . . . 7.5 hours plus . . . [a] paid .5- hour meal break." (AR 2580-81, 2598-99, 2624-25.) Given this evidence, the Review Board's determination that the four hospitals pay for lunch breaks passes muster under the APA. *See* 5 U.S.C. § 706(2)(E); *Richardson*, 402 U.S. at 401.

Plaintiffs further contend that the Secretary's policy arbitrarily classifies non-productive lunch breaks as paid hours for some hospitals but not others, citing *Sarasota Memorial Hospital v. Shalala*, 60 F.3d 1507 (11th Cir. 1995), and *ViaHealth of Wayne Co. v. Johnson*, No. 07-CV-

9

6638T, 2009 WL 995611 (W.D.N.Y. Apr. 14, 2009), as support.  The *Sarasota* court held that the Secretary's classification of FICA taxes as wages, if hospitals withheld them from employee pay checks, and fringe benefits, if hospitals paid them directly to the government, was arbitrary. 60 F.3d at 1511-13.  The *ViaHealth* court held that the Secretary's treatment of short-term disability benefits as paid time, if the cost was paid directly by a hospital, but unpaid time, if the cost was paid through an insurance company, was arbitrary.  2009 WL 995611, at *5-6.  In other words, these courts barred the Secretary from giving different treatment to the same incurred cost.  In this case, however, there is substantial evidence that the lunch break cost is not incurred by all hospitals.  (*See, e.g.,* AR 78-85, 2580-81, 2598-99, 2624-25.)  Because the Secretary is not giving different treatment to a common cost, the lunch break policy does not run afoul of *Sarasota* and *Viahealth*.

In short, the Provider Reimbursement Review Board's affirmance of the Secretary's decision to include the paid lunch breaks reported by Stroger, Samson, St. Joseph and Landmark in the calculation of the disputed wage indices is not arbitrary, capricious or otherwise lawful.  Thus, the Court affirms the decision.

### Conclusion

For the reasons stated above, the Court affirms the June 26, 2009 decision of the Provider Reimbursement Review Board, denies plaintiffs' motion for summary judgment [doc. no. 24], grants defendant's cross-motion for summary judgment [doc. no. 27] and terminates this case.

**SO ORDERED.**　　　　　　　　　　　**ENTERED:**

**August 30, 2010**

----------------------------------------
**HON. RONALD A. GUZMAN**
**United States District Judge**

10